IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

**FILED**

NOV 2 0 2002

LARRY W. PROPES, CLERK
CHARLESTON, SC

| | | |
|---|---|---|
| Sabina Carey, | ) | |
| Plaintiff, | ) | C/A No. 2:01-2612-18BG |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| ABC Hospitality, LLC and Shelby | ) | |
| Simmons, | ) | |
| Defendants. | ) | |

This matter is before the court upon the Magistrate Judge's recommendation that defendant's Motion for Summary Judgment be granted. This record includes a Report and Recommendation of the United States Magistrate Judge made in accordance with 29 U.S.C. § 636(b)(1)(B) (1994).

## I.    TIME FOR FILING OBJECTIONS

A party may object, in writing, to a Magistrate Judge's Report and Recommendation within ten days after being served with a copy. 28 U.S.C. § 636(b)(1)(C) (1994). Three days are added to the ten day period if the Report and Recommendation is mailed rather than personally served. Fed. R. Civ. P. 6(e). The Magistrate Judge filed this Report and Recommendation on July 24, 2002. Plaintiff filed her written objections on August 16, 2002. Defendant filed its response to plaintiff's objections on August 22, 2002.

## II.    REVIEW OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This court is charged with conducting a <u>de novo</u> review of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is

85

registered and may accept, reject, or modify, in whole or in part, the recommendations

contained in that report. 28 U.S.C. § 636(b)(1)(C). A party's failure to object is accepted

as agreement with the conclusions of the Magistrate Judge. Thomas v. Arn, 474 U.S. 140

(1985). This court is not required to review, under a de novo standard, or any other

standard, the factual findings and legal conclusions of the Magistrate Judge to which the

parties have not objected. Id. at 149-50. A party's general objections are not sufficient to

challenge a Magistrate Judge's findings. Howard v. Secretary of Health & Human Servs.,

932 F.2d 505, 508-09 (6th Cir. 1991). The recommendation of the Magistrate Judge

carries no presumptive weight, and the responsibility to make a final determination

remains with this court. Matthews v. Weber, 423 U.S. 261, 270 (1976). This court has

the statutory discretion to "accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate . . . [,or even] receive further evidence or

recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b)(1).

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment will be granted when "there is no genuine issue as to any

material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c). The moving party bears the burden of showing that there is no genuine

issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986); Charbonnages de France v. Smith, 597 F.2d 406,

414 (4th Cir. 1979). If the moving party carries its burden of showing that there is an

absence of evidence to support a claim, then the non-moving party must demonstrate by

affidavit, depositions, answers to interrogatories, and admissions on file that there is a

2

genuine issue of material fact for trial. Celotex Corp., 477 U.S. at 324-25. An issue of fact is "genuine" when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "material" only if establishment of the fact might affect the outcome of the lawsuit under the governing substantive law. Id. When determining whether there is an issue for trial, the court must view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Moore v. Winebrenner, 927 F.2d 1312, 1313 (4th Cir. 1991).

## IV.    PLAINTIFF'S OBJECTIONS

Plaintiff has asserted that the Magistrate Judge failed to view the evidence in the light most favorable to plaintiff when analyzing her Title VII claim. As a result, plaintiff claims that summary judgment was inappropriate.

### A.    Plaintiff's Affidavit

As a preliminary matter, this court addresses the admissibility of newly submitted evidence in the form of plaintiff's sworn affidavit—a document which plaintiff relied heavily upon in her objections to the Magistrate Judge's Report and Recommendation. Plaintiff apparently felt compelled to supplement her sworn deposition testimony regarding central issues in this case with testimony presented by way of an affidavit, notwithstanding the completion of formal discovery. Interestingly, several statements contained within plaintiff's affidavit appear to directly conflict with, if not entirely

3

contradict, previously sworn statements taken during her deposition.[1]  Indeed, it appears

that in light of the Magistrate Judge's recommendation that summary judgment be

granted in favor of defendant, plaintiff has attempted, by way of this affidavit, to bolster

her claim that Shelby Simmons' ("Simmons") alleged harassment was "motivated on the

basis of sex." (Pl.'s Obj. at 6).  This court is of the opinion that allowing plaintiff to rely

on her contradictory affidavit at this late stage would unduly prejudice defendant.

Moreover, it is unlikely that plaintiff's true opinions regarding Simmons' sexuality would

suddenly surface in this sworn affidavit filed on August 15, 2002 rather than in March of

2002, when she was repeatedly questioned about her opinions concerning Simmons'

behavior.  In light of this, plaintiff's affidavit appears to be a transparent attempt to create

an issue of fact concerning Simmons' sexual orientation at this late date.  Such tactics are

---

[1] For instance, when questioned about her alleged harasser's sexual orientation during her deposition, plaintiff repeatedly answered that she did not have an opinion one way or another about whether Shelby Simmons was homosexual:

> Q.   Do you (Sabrina Carey) have a belief as to why [Shelby Simmons] did it (grabbed her buttocks)? Why do you think she did it?
>
> A.   I don't know . . . .
>
> Q.   And do you have an opinion as to why [Shelby Simmons] allegedly grabbed your breast?
>
> A.   I don't have no opinion . . . .
>
> Q.   So you can't say why she did it; and you don't have an opinion as to why she did it; is that correct? . . . .
>
> A.   Yeah.

(Pl.'s Dep. at 59-68).  Despite this testimony taken in March of 2002, plaintiff avers in her newly submitted affidavit that she believes Shelby Simmons "was motivated by sex and was seeking to engage in homosexual activities with me." (Carey Aff. ¶ 4).  This contradiction is particularly noteworthy, because one of the three ways a claimant may prove they were discriminated upon because of their sex in a Title VII same-sex sexual-harassment claim is by producing "credible evidence that the harasser was homosexual." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998).

4

violative of Rule 5.01 of this District's Local Rules,[2] and are clearly impermissible within this circuit. See King v. Va. Employment Comm'n, No. 93-1619, 1994 WL 416439, at *3 (4th Cir. Aug. 10, 1994) (per curiam) ("It is well established law in this circuit and other circuits that a party may not create a genuine issue of fact in response to a summary judgment motion by filing an affidavit that contradicts earlier deposition testimony."). Furthermore, the untimely nature of plaintiff's affidavit is amplified by the timing of her objection, which was filed late without explanation.

Accordingly, this court will not consider plaintiff's submitted affidavit, and will instead limit the record to the evidence considered by the Magistrate Judge in making his Report and Recommendation.

**B.     Plaintiff's Hostile Work Environment Claim**

Plaintiff has objected to the Magistrate Judge's finding that she failed to establish a prima facie hostile-environment sexual-harassment claim pursuant to Title VII. Specifically, plaintiff argues that she has presented ample evidence to prove that a genuine issue of material fact exists as to each and every element required to prove a cause of action.  In making this argument, plaintiff is correct in pointing out that "at the summary stage, the Plaintiff need not prove her case, [but need prove] only that there is a

---

[2] Local Rule 5.01 provides in part that:

> If discovery material or depositions are to be used at trial or are necessary to resolution of a pretrial motion which might result in a final order or any issue, the portions to be used shall be filed with the Clerk of Court at the outset or at the filing of the motion insofar as their use can be reasonably anticipated.

(emphasis added).

5

genuine issue of material fact regarding the merits of her claim." (Pl.'s Obj. at 13).

However, when the moving party has presented ample evidence showing that there is no

material issue of fact, the non-moving party "may not rest upon the mere allegations or

denials of the adverse party's pleadings, but the [non-moving party's] response . . . must

set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.

56(e). Precisely because plaintiff has failed to "set forth facts showing that there is a

genuine issue for trial" with regard to the dispositive elements of her case, the Magistrate

Judge was correct in granting summary judgment in favor of ABC Hospitality, LLC

("ABC Hospitality").

i.     <u>**Plaintiff's Allegations Are Insufficient To Establish A *Prima Facie* Case Under Title VII**</u>

Title VII of the Civil Rights Act makes it unlawful for employers to discriminate

against employees based on gender regarding the terms, conditions, or privileges of their

employment. 42 U.S.C. § 2000e-2(a)(1) (1994). In interpreting Title VII, the Supreme

Court has placed limits upon its reach and application. Specifically, "Title VII does not

prohibit all verbal or physical harassment in the workplace; it is directed only at

'discrimination . . . because of . . . sex.' " <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523

U.S. 75, 80 (quoting 42 U.S.C. § 2000e-2(a)(1)). Nor is Title VII intended to serve as a

"general civility code." <u>Id.</u> at 81. Rather, in prohibiting sexual harassment in the

workplace through the enforcement of Title VII, the courts are to judge "the objective

severity of [the alleged] harassment . . . from the perspective of a reasonable person in the

plaintiff's position, considering 'all of the circumstances.' " <u>Id.</u> (quoting <u>Harris v. Forklift</u>

6

Sys., Inc., 510 U.S. 17, 23 (1993)).

Aside from these interpretive limitations set forth by the Supreme Court, a plaintiff may succeed on a hostile-environment sexual-harassment claim by proving four elements by a preponderance of the evidence: (1) that she was harassed because of her sex; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer. Smith v. First Union Nat'l Bank, 202 F.3d 234, 241 (4th Cir. 2000). Plaintiff has objected to the Magistrate Judge's finding that she failed to establish an issue of fact for all but one element of her claim—the exception being the requirement that she show that the alleged harassment was unwelcome. Therefore, each of the remaining three elements will be discussed below.

        a.     **Plaintiff Failed to Establish that She Was Harassed "Because of" Her "Sex"**

This is a same-sex hostile-environment sexual-harassment case. Plaintiff claims she was sexually harassed by her female "supervisor," defendant Shelby Simmons, with inappropriate remarks and touching on three separate occasions. (Pl.'s Dep. at 164-65). The Supreme Court has made it clear that Title VII operates to prevent sexual harassment between members of the same sex just as it does for members of the opposite sex. Oncale, 523 U.S. at 79 (holding that "nothing in Title VII necessarily bars a claim of discrimination 'because of . . . sex' merely because the plaintiff and defendant . . . are of the same sex"). Because of the nature of such claims, however, plaintiffs in same-sex cases are presented with unique evidentiary burdens in comparison to sexual-harassment

7

cases between members of the opposite sex. See id. at 80 (stating that in contrast to same-sex sexual-harassment cases, "courts and juries have found the inference of discrimination easy to draw in most male-female sexual-harassment situations because the challenged conduct typically involves explicit or implicit proposals of sexual activity"). Indeed, the Fourth Circuit has recently interpreted these evidentiary burdens as creating a "formidable obstacle" to a plaintiff's ability to prove the "because of sex" element in a same-sex sexual-harassment case. Lack v. Wal-Mart Stores, Inc., 240 F.3d 255, 260 (4th Cir. 2001).

The Supreme Court first articulated the special evidentiary burdens facing same-sex sexual-harassment claimants in Oncale v. Sundowner Offshore Servs., Inc., 523 US 75 (1998). There the Court carved out three various evidentiary routes available to a plaintiff for proving that the alleged harassment was "because of sex." A plaintiff can meet this burden if: (1) they are able to provide "credible evidence that the harasser [is] homosexual;" (2) can establish that they were harassed "in such sex-specific and derogatory terms" by a member of the same sex "as to make it clear that the harasser is motivated by [a] general hostility to the presence" of members of that sex "in the workplace;" or (3) can "offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." Oncale 523 U.S. at 81. However, "[w]hatever evidentiary route the plaintiff chooses to follow, [she] must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimination . . . because of . . . sex.' " Id. (emphasis in original).

8

In her objections, plaintiff argues that she has satisfied the requirements of the first evidentiary route, or alternatively the second route, in establishing that she was subjected to harassment "because of" her sex. (Pl.'s Obj. at 2). For the reasons set forth below, this court is unable to conclude that plaintiff met her burden under either option.

As mentioned, under the first evidentiary route articulated in <u>Oncale</u>, plaintiff could demonstrate that she was harassed "because of sex" by providing this court with credible evidence that Simmons is homosexual. In assessing whether evidence is "credible" or not, courts have discussed two methods of approach: 1) plaintiff could meet her burden were she to provide evidence that Simmons possessed a "sexual desire" for her; or 2) alternatively, plaintiff could prove she was harassed because of her sex by providing corroborative evidence that Simmons is homosexual by a means other than pointing towards the behavior of which she complains. <u>See</u> <u>English v. Pohanka of Chantilly, Inc.</u>, 190 F.Supp.2d 833, 844-47 (E.D. Va. 2002).

Under the first approach, a plaintiff could meet her burden by establishing an inference that an alleged harasser possessed a "sexual desire,"and acted upon that desire through her harassing behavior. <u>See</u> <u>Oncale</u> 523 U.S. at 80 (stating that providing "credible evidence that the harasser [is] homosexual[,]" involves establishing that the harassing conduct be "motivated by sexual desire"); <u>see also</u> <u>Bibby v. Phila. Coca-Cola Bottling Co.</u>, 260 F.3d 257, 262 (3d Cir. 2001) (stating that "credible evidence" that the harasser is homosexual involves providing "evidence that the harasser sexually desires the victim"). The Fourth Circuit has held that substantiating such a "sexual desire" includes providing evidence that the alleged harasser engaged in acts of "earnest sexual

9

solicitation." <u>Lack v. Wal-Mart Stores, Inc.</u>, 240 F.3d 255, 261-62 (4th Cir. 2001). And such acts must, by their nature, raise an inference that the harasser's "overall behavior amounted to sexual propositioning." <u>English</u>, 190 F.Supp.2d at 845 (E.D. Va. 2002).

In an attempt to establish this type of behavior, plaintiff points the court to two separate instances where Simmons allegedly touched her, once by grabbing her buttocks, and once by grabbing her breast. (Pl.'s Compl. at 53, 64). Plaintiff would have this court interpret these two instances as amounting to an "earnest sexual solicitation." (Pl.'s Obj. at 3). However, the events surrounding these two incidents establish otherwise. For instance, each of the alleged incidents was accompanied by Simmons' "giggling" and "laughing," (Pl.'s Dep. at 54, 60, 64), and both instances occurred in the presence of others. (Pl.'s Dep. at 53, 64). Moreover, plaintiff described the incident where Simmons allegedly grabbed her buttocks as a "little touch." (Pl.'s Dep. at 127). Such behavior and surrounding circumstances typically do not accompany an "earnest sexual solicitation." See <u>English</u>, 990 F.Supp.2d at 837-38 (E.D. Va. 2002) (noting that joking behavior in the presence of others does not amount to actionable sexual harassment). And when evaluating whether harassment was motivated because of sex, <u>Oncale</u> holds that context matters. Specifically, courts are carefully instructed to consider all alleged actions in light of their surrounding context to ensure that they do not mistake same-sex "horseplay" or "simple teasing or roughhousing among members of the same sex" for gender discrimination. <u>Oncale</u>, 523 U.S. at 82.

Therefore, even when viewed in the light most favorable to plaintiff, Simmons' actions do not amount to an "earnest sexual solicitation." Indeed, several courts have

rejected sexual-harassment claims based on conduct equally or more sexually charged than the conduct alleged here. See Weiss v. Coca-Cola Bottling Co., 990 F.2d 333, 337 (7th Cir. 1993) (holding that the plaintiff's claims that her supervisor repeatedly asked about her personal life, told her how beautiful she was, asked her on dates, called her a dumb blonde, put his hand on her shoulder at least six times, placed "I love you" signs in her work area, and tried to kiss her once at a bar and twice at work, did not establish an actionable sexual-harassment claim); English, 190 F.Supp.2d at 837-38 (E.D. Va. 2002) (harasser's lewd comments and behavior, including statements that "he wanted to place his salami between [plaintiff's] cheeks[,]" saying he 'love[d]' the plaintiff, as well as his "constantly smacking [plaintiff] on the behind . . . [and] rub[bing] his finger across [plaintiff's] back [and] touch[ing] . . . his shoulder[,] were not enough for plaintiff to survive summary judgment on a same-sex hostile-environment sexual-harassment claim). Rather, the "constellation of surrounding circumstances" in this case makes clear that plaintiff has not created an inference that Simmons was sexually propositioning her during the incidents as alleged.[3] Oncale, 523 U.S. at 82.

Similarly, plaintiff has not provided credible evidence that Simmons is homosexual. For instance, although plaintiff attempted to use a co-worker's testimony as evidence that Simmons is homosexual, even when considered in the light most favorable to plaintiff, this evidence is dubious at best. When questioned about Simmons' sexual

---

[3] This is especially clear in light of testimony provided by one of plaintiff's co-workers, Sara Daly. In describing Simmons' behavior, Daly testified that, "when [Simmons] was . . . happy about something she'd hit you or she'd touch you somewhere. She's just got to put her hands on you, that's all, that's the way I see it. That was it." (Daly Dep. at 89).

11

orientation, Sara Daly, plaintiff's co-worker, testified, that "it was hard to tell. . . [but] she give you that impression." (Daly Dep. at 91). But even this best piece of evidence offered by plaintiff to create an inference that Simmons is homosexual is negated by Daly's testimony as a whole. For example, in reference to Simmons' behavior, Daly also testified in her opinion that "[Simmons is] fresh . . . she does inappropriate things . . . she would do inappropriate things and don't think about it." (Daly Dep. at 85) (emphasis added). Daly's testimony also makes it clear that Simmons' inappropriate behavior was not exclusively directed towards women.

> Q.    Did you ever see Miss Simmons either touch anybody else at the job while you all were on the clock or while you weren't on the clock?
>
> A.    Yes, I did . . . . She touched an employer [sic] by the name of George . . . . They were walking down the hall . . . and she, well, we call it goose, . . . . She grabbed him . . . in his pants in the back, . . . and then . . . she went to the front . . . . Between his legs.

(Daly Dep. at 88-89).

Additionally, plaintiff, through her own testimony, has offered no admissible evidence that she believes Simmons is homosexual. Indeed, after repeated questioning on this issue, plaintiff did not provide an opinion one way or another regarding Simmons' sexual orientation.

> Q.    Is it possible that Ms. Simmons touched you because she thought that maybe you liked women?
>
> A.    I'm not going to answer for that.
>
> Q.    Do you have a belief as to why she did it? Why do you think she did it?

12

A.    I don't know.

Q.    And you don't have an opinion as to why she touched you?

A.    I don't.

(Pl.'s Dep. at 59-60).

In sum, viewing the facts in the light most favorable to plaintiff, it appears from the record as a whole that Simmons' behavior, although certainly inappropriate, was not directed at plaintiff because of her sex.  Plaintiff has failed to establish a factual issue that Simmons possessed a "sexual desire" for her, nor has she produced any other "credible evidence" that Simmons is homosexual.  To the contrary, the facts express that the "instant case does not involve 'conduct [that] goes far beyond casual obsenity[,]'" and such cases are not actionable under Title VII.  English, 190 F.Supp.2d at 846 (quoting Shepherd v. Slater Steels Corp., 168 F.3d 998, 1010 (7th Cir. 1999)).

In the alternative, plaintiff argues that she was harassed in such sex-specific derogatory terms as to make it clear that Simmons was motivated by a general hostility to the presence of women in the workplace.  (Pl.'s Obj. at 5 (citing Oncale, 523 U.S. at 80)). The factual record, however, does not support this argument.  As previously discussed, the record shows that Simmons not only directed her inappropriate behavior at plaintiff, but acted in a similar fashion towards males as well.  Thus, despite plaintiff's allegations to the contrary, Simmons' behavior cannot reasonably be interpreted as "sex-specific." Accordingly, even assuming all of plaintiff's allegations are true, she is nonetheless unable to meet her evidentiary burden.

13

**b.**     **Plaintiff Failed to Establish that Simmons' Behavior was Severe or Pervasive Enough to Create an Objectively Hostile or Abusive Work Environment**

"A recurring point in [Supreme Court] opinions [addressing hostile-environment sexual-harassment claims] is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quoting Oncale, 523 U.S. at 82). Despite this fact, however, plaintiff argues that the alleged three separate incidents occurring between Simmons and plaintiff were "sufficiently severe or pervasive to alter the Plaintiff's conditions of employment and created an abusive work environment." (Pl.'s Obj. at 9).

Sexual harassment constitutes sex discrimination only when it can be established that the harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). The inquiry here is both subjective and objective. First, the employee must "subjectively perceive" the harassment as sufficiently severe or pervasive to alter the terms or conditions of employment. Second, this subjective perception must be objectively reasonable. Id. The Supreme Court has identified four factors that should be considered in determining whether the alleged harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct reasonably interferes with the employee's job performance. Id. at 23. In applying these factors,

14

courts are instructed to examine the conduct in context, not as isolated acts, and determine under the totality of circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment.  Id.

Applying these factors to Simmons' behavior and viewing all allegations in a light most favorable to plaintiff, plaintiff's argument nonetheless fails.  Plaintiff alleged that over the course of three months she was subjected to three incidents of sexual harassment by Simmons:  (1) In May of 2000 Simmons grabbed her buttocks; (2) In June 2000 Simmons grabbed her breast; and (3) in July 2000 Simmons passed a room that plaintiff was cleaning which had an unpleasant odor and stated that the room smelled like a "vagina." (Pl.'s Dep. at 53, 29-30, 70).  Turning to the factors articulated in Harris, it is immediately clear from the factual record that three—the frequency of the conduct; the severity of the conduct; and whether the conduct reasonably interferes with the employee's job performance—out of four factors cannot be established.

First, the three incidents alleged by plaintiff cannot establish a "frequent" pattern of harassment.  By comparison, actionable conduct typically consists of daily harassing behavior over a long period of time.  See e.g., Indest v. Freeman Decorating, 164 F.3d 258 (5th Cir. 1999) ("All of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiff's work environment.").

Second, none of the conduct alleged by plaintiff is objectively "severe."  Although certainly offensive and inappropriate, Simmons' acts of grabbing plaintiff's breasts and

15

buttocks, without more, fail to reach even the minimum standard of actionable conduct. Indeed, the Fourth Circuit as well as other circuits have denied hostile-environment sexual-harassment claims involving more egregious sexual remarks and touching than the instances alleged here.   See Adusumilli v. City of Chicago, 164 F.3d 353 (7th Cir. 1998) (holding actions insufficient to support a hostile environment claim where co-employees teased the plaintiff, made sexual jokes aimed at her, commented about her low-neck tops, repeatedly stared at her breasts with attempts to make eye contact, and engaged in four incidents of touching her arm, fingers, or buttocks); Hopkins v. Balt. Gas & Elec. Co., 77 F.3d 745 (4th Cir. 1996) (evidence that the harasser bumped into the plaintiff, positioned a magnifying glass over the plaintiff's crotch, flipped his tie over to see its label, gave the plaintiff a congratulatory kiss in the receiving line at [a] wedding, and stared at him in the bathroom was insufficient to establish a same-sex sexual-harassment claim under Title VII).

Third, it is clear from the record that Simmons' conduct did not interfere with plaintiff's ability to perform her job.  When questioned about her job performance plaintiff indicated that the alleged harassment did not affect her ability to work.

> Q.     But you worked those days between when the incident allegedly occurred and you told [your supervsisor]?  You worked those days, didn't you?
>
> A.     Yes, I did.
>
> Q.     [Y]ou did your job well?
>
> A.     Yeah.
>
> Q.     [W]as your performance ever poor; or were you

16

> always, you know, a good performer . . . . I presume that
> you always were able to do your job well?
>
> A.      Yeah, I think so.

(Pl.'s Dep. at 94).  And the record is devoid of any evidence that the cumulative effect of Simmons' behavior unreasonably interfered with plaintiff's job performance.

Turning to the remaining factor—whether Simmons' conduct was physically threatening or humiliating, or a mere offensive utterance—plaintiff established by her testimony that she was humiliated by Simmons' behavior.  This subjective element standing alone, however, is not sufficient.  Plaintiff was not threatened by Simmons, (Pl.'s Dep. at 52), and there is no evidence indicating that Simmons forced herself upon plaintiff at anytime, nor that she acted in any manner other than teasing—albeit lewdly and offensively—plaintiff in the presence of other co-workers.  In fact, humiliation is the only facet of the four-factor test which plaintiff can establish.  And this factor, which for the most part is lacking, does not compensate for the absence of the other factors.  See Mendoza v. Borden, Inc., 195 F.3d 1238, 1248 (11th Cir. 1999) (stating that a plaintiff may not claim that the harasser's conduct was sufficiently severe or pervasive where only one factor is partially established).

In sum, although Simmons' conduct was inappropriate and vulgar in the context of plaintiff's work environment, such behavior, without more, is not actionable under Title VII.  Under Harris's four-factor test, plaintiff is unable to demonstrate that plaintiff's conduct was so objectively hostile to alter the terms and conditions of her employment.

### c. **Plaintiff Failed to Establish a Legal Basis For Imputing Liability to Simmons' Employer**

Finally, plaintiff objects to the Magistrate Judge's conclusion that she has not established a basis for imputing liability to ABC Hospitality, Simmons' employer. In support of this argument, plaintiff alleges that the harassing behavior persisted despite her reporting Simmons' conduct on two separate occasions to ABC Hospitality's general manager. (Pl.'s Dep. at 72; Pl.'s Obj. at 9). Plaintiff alleges this persistent, unremedied harassment was the result of ABC Hospitality's ineffectual sexual-harassment policy and its failure to investigate plaintiff's complaints. (Pl.'s Obj. at 11). Even assuming all of plaintiff's allegations are true, however, this court is unable to find any basis for imputing liability to ABC Hospitality for Simmons' alleged misbehavior.

Under the "aided-by-agency" principle as expressed in the Second Restatement of Agency, "an employer is <u>subject to</u> vicarious liability for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." <u>Mikels v. City of Durham</u>, 183 F.3d 323, 331 (4th Cir. 1999) (emphasis added) (quoting Restatement (Second) of Agency § 219(2)(d)). As the Fourth Circuit has expressed, however, "subject to" is not meant to imply "automatically liable" with respect to a plaintiff's employer, "because not all harassment even by supervisory personnel is necessarily aided by agency relation." <u>Mikels</u>, 183 F.3d at 331 (internal quotations omitted). Rather, the inquiry into whether the particular conduct was "aided by the agency relation" centers upon a supervisor's relative level of control over a claimant. Specifically, where supervisory powers are considerable, "[a]ny harassing



18

conduct . . . against the victim is necessarily conduct 'aided by the agency relation,' " whereas "harassment by a fellow employee having no authority of any kind over the victim never can be found [to be] aided by the agency relation." Mikels, 183 F.3d at 332 (internal quotations omitted). "The determinant is whether . . . [the harasser's] authority[,] [in relation to the claimant, is such that they have the power of] hiring, firing, [promoting,] reassignment . . . or [making] a decision causing a significant change in benefits." Id. at 333. In this way the standard is "malleable," allowing for a middle ground between the two "extremes" as described above. Id.

Therefore, where, as in this case, the harasser occupies a position higher in rank to the claimant, the conduct will not be considered "aided by the agency relation" when it is evident that the authority over the claimant is "at best minimal." Id. at 334. Here, Simmons' authority over plaintiff was limited to supervising room maintenance and to making sure that the rooms were cleaned appropriately. (Pl.'s Dep. at 51). Such authority, as plaintiff admits, did not carry with it the power to fire or take disciplinary action against anyone in plaintiff's position. (Pl.'s Dep. at 51). Moreover, plaintiff, by her own reactions towards Simmons' behavior, never expressed that she felt she was unable to walk away or rebuke Simmons because of the rank of her position at ABC Hospitality. (Pl.'s Dep. at 54, 64, 70). Where this is the case, "aided-by-agency-relation vicarious liability is not warranted," and "employers are liable only for their own negligence in failing, after actual or constructive knowledge, to take prompt and adequate action to stop [the unaided harassment]." Mikel, 183 F.3d at 332, 334 (emphasis added).

Under a negligence standard, ABC Hospitality's actions were reasonable.

Following plaintiff's initial complaint of harassment, ABC Hospitality's general manager, Cheryl Reseck, investigated the incident but was unable to corroborate plaintiff's allegations. (Reseck Dep. at 47). Similarly, following plaintiff's second complaint of harassment, Reseck investigated but was again unable to substantiate plaintiff's claim. (Reseck Dep. at 48). In fact, of the three incidents plaintiff brought to Reseck's attention, Reseck was only able to confirm the third incident involving Simmons' inappropriate use of language. (Reseck Dep. at 49). Following Reseck's corroboration of this incident, Simmons was terminated. (Reseck Dep. at 49). Moreover, following Simmons' termination plaintiff was provided with the opportunity to transfer to a new location if she so desired, but plaintiff refused. (Reseck Dep. at 50).

From these facts, it is evident that ABC Hospitality's actions were adequate and ultimately culminated in removing Simmons' harassment from the workplace by her eventual termination. Although plaintiff contends that irrespective of her complaints she nonetheless was forced to endure Simmons' continual harassing behavior, the factual record indicates that ABC Hospitality reacted to her complaints in a timely fashion. Moreover, despite plaintiff's complaints, the Fourth Circuit has "not required that particular remedial responses be the most certainly effective that could be devised, [and gives] great weight to the fact that a particular response was demonstrably adequate to cause cessation of the conduct in question." Mikel, 183 F.3d at 330.

## V. CONCLUSION

In sum, plaintiff's objections must be rejected. She has failed to create an issue of material fact to withstand summary judgment on three out of the four elements necessary

20

for a prima facie claim for same-sex sexual harassment under Title VII.

For the reasons set forth above, it is therefore,

**ORDERED**, that the Magistrate Judge's Report and Recommendation be affirmed and that defendant ABC Hospitality's Motion for Summary Judgment be **GRANTED**.

**AND IT IS SO ORDERED**.

_____
DAVID C. NORTON
**UNITED STATES DISTRICT JUDGE**

November _____, 2002
**Charleston, South Carolina**

21